UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.

                                                    Case No. 08-20621
ARTHUR BECKLEY,                          Honorable Julian Abele Cook, Jr.

        Defendant.

## ORDER

On February 4, 2009, a federal grand jury returned a superseding indictment which charged the Defendant, Arthur Beckley, with conspiring with other persons to distribute a controlled substance, in violation of 21 U.S.C. §§ 846 and 841(a)(1). On August 18, 2009, he filed a motion[1] which sought to obtain a judicial determination that the guideline status of benzylpiperazine,[2] also

---

[1] This motion was submitted to the Court by Beckley ostensibly with the assistance of Joseph P. Bono whom he proclaims to be an expert chemist. However, it should be noted that Beckley neither proffered nor attempted to proffer Bono as a witness who, under the authority of Fed. R. Evid. 702 et seq., may have been able to introduce another view point on the issue now pending before the Court. In essence, Bono never appeared as a witness whose (a) qualifications to opine as an expert in the forensic science field could be determined, and (b) opinions could be explored through the process of examination and cross examination during the December 16, 2009 hearing .

[2] Benzylpiperazine is listed as a Schedule I controlled substance in Title 21, Section 1308.11 of the Code of Federal Regulations. Significantly as it is related to the pending motion, it is not referenced in the Drug Quantity or the Drug Equivalency Tables of the United States Sentencing Guidelines. Thus, the Court must attempt to identify the most closely related controlled substance for the purpose of resolving this motion and imposing an appropriate sentence.. *See* U.S. Sentencing Guidelines Manual § 2D1.1 cmt. n.5.

1

known as BZP, is most closely related to methylphenidate. The Government opposes such a conclusion, asserting that inasmuch as the challenged narcotic in this case is actually a combination of BZP and 1-(3-trifluoromethylphenyl)-piperazine ("TFMPP"), the Court should declare the most closely related controlled substance to be methylenedioxymethamphetamine ("MDMA)," more commonly known as ecstasy.

On November 10, 2009, Dr. Laureen Marinetti[3] was appointed by the Court to assist it in serving as an independent forensic science expert who would be able to assist it in resolving the contested issues in this case. On December 16, 2009, the Court convened an evidentiary hearing which was designed to address Beckley's motion of August 8th.[4] During this hearing, the Court (1) permitted the parties, through their counsel, to explore the veracity of Dr. Marinetti's testimony as well as the qualities of her opinions, and (2) authorized the admission of her December 8th report, as well as Bono's report into evidence.[5] At the conclusion of the December 16th hearing,

---

[3]The name of Dr. Marinetti was submitted by the Government at the invitation of the Court. Prior to this submission, the Court had solicited the counsel for both parties to identify the names of any and all persons who possessed the requisite scientific, technical or some other specialized credential (i.e., knowledge, skill, experience, training or education) within the forensic science field that could assist it in resolving the issues that had been raised in Beckley's currently pending motion. Subsequent to its receipt of the Government's nominee, the Court transmitted a letter to Beckley in which it sought the input of his counsel who could react to Dr. Marinetti's nomination and/or submit a proposed alternative expert witness for consideration. Unfortunately, the Court never received any response from Beckley to its inquiry.

[4]Dr. Laureen Marinetti identified herself during the hearing as the Chief Forensic Toxicologist for the Montgomery County Regional Crime Laboratory in Dayton, Ohio. Prior to the commencement of the hearing (December 8, 2009), she had submitted a report to the Court which contained her opinions regarding the contested issues in this case. Her report was forwarded to the counsel of record by the Court on the following day.

[5]With recognition that (1) Bono had neither appeared directly nor indirectly in this criminal action to support his "credentials" as a chemical expert, and (2) Beckley had not satisfied the minimum standards for introducing a document into evidence as defined by the Federal Rules of Evidence, the Court nonetheless accepted the Defendant's "expert" report into

the motion was taken under advisement, with a directive to the parties to file post-hearing briefs and address specific questions from the Court.

I.

According to the Government, Beckley recruited his cousin, Shantell Johnson, and her friend, Albany Cooper,[6] to travel to Canada where they were instructed to pick up approximately five thousand (5,000) ecstasy pills, and smuggle them into the United States. Johnson and Cooper were arrested by federal authorities when they attempted to cross the Ambassador Bridge from Canada into the United States. Thereafter, these two women - after agreeing to cooperate with the Government with the aid of recording devices - called Beckley and another Defendant, Craig Thomas[7] with whom they made arrangements for the delivery of the contraband. When Beckley joined the two women in their motor vehicle at a designated parking lot in the United States, he was arrested by the federal agents and immediately placed under custody. A field test of the pills by a border patrol officer produced a positive result for ecstasy.[8]

On November 25, 2008, Beckley was officially accused by a grand jury of violating 21 U.S.C. §§ 846 and 841(a)(1); namely, conspiring with other persons to distribute MDMA.

---

evidence for the purposes of giving some "balance" of opinions in this highly technical scientific area. However, the Court, in "admitting" the Bono report, announced that it would not consider his views relating to the current status of Beckley to the United States Sentencing Guidelines. *See* Bono's report at paragraph three, page nine.

[6] Shantell Johnson and Albany Cooper are also Defendants in this case. They have both (1) pled guilty and (2) been sentenced by the Court.

[7] Craig Thomas has entered a guilty plea and is currently awaiting the imposition of a sentence by the Court.

[8] Johnson, Cooper, and Thomas testified during the hearing on December 16, 2009 it was their collective belief at the time of their arrests, that confiscated drugs were ecstasy pills.

However, with an apparent recognition that a subsequent analysis of the confiscated "ecstasy" pills by the Drug Enforcement Administration ("DEA") revealed that they actually contained a combination of other chemicals (i.e., BZP, TFMPP, and caffeine), the Government subsequently filed a superseding indictment in which Beckley was accused of having conspired with other persons to distribute BZP.

II.

In support of his motion, Beckley initially argues that, inasmuch as the superseding indictment charges him with conspiring to distribute BZP, the Court should be constrained to consider this drug only when attempting to identify the most closely related controlled substance. The Government counters by submitting that the Court is permitted to consider facts outside of the indictment when determining the appropriate punishment for a defendant as long as the sentence does not exceed the statutory maximum.

Nearly a decade ago, the Supreme Court reiterated – according to long-standing common law history – that a criminal defendant's constitutional rights to due process of law, a speedy and public trial, and an impartial jury of his peers were at stake when determining the charges in an indictment which must be determined beyond a reasonable doubt by a jury. *Apprendi v. New Jersey*, 530 U.S. 466, 476 (2000). Nevertheless, the Court explained that "nothing in this history suggests that it is impermissible for judges to exercise discretion – taking into consideration various factors relating both to offense and offender – in imposing a judgment within the range prescribed by statute." *Id.* at 481. Indeed, as stated recently by the Sixth Circuit Court of Appeals,

> [a]djustments to the base-offense level routinely depend upon facts found by sentencing judges by a preponderance of the evidence. The Supreme Court has sanctioned judicial factfinding, even factfinding that enhances rather than reduces a defendant's sentence, so long as the factfinding does not result in a sentence beyond

the statutory maximum.

*United States v. Thompson*, 515 F.3d 556, 568 (6th Cir. 2008); *see also United States v. White*, 551 F.3d 381, 385 (6th Cir. 2008) ("So long as the defendant receives a sentence at or below the statutory ceiling set by the jury's verdict, the district court does not abridge the defendant's right to a jury trial by looking to other facts, including acquitted conduct, when selecting a sentence within that statutory range."); *United States v. Sexton*, 512 F.3d 326, 330 (6th Cir. 2008) ("the maximum statutory penalty that the district court could impose was determined by the statute of conviction, rather than by a Guidelines range calculated using only jury findings.") Furthermore, such a judicial fact-finding effort should be conducted pursuant to a preponderance of the evidence standard. *Sexton*, 512 F.3d at 330.

The laws of the United States succinctly state that a person who conspires to commit an offense under Section 846 of Title 21, United States Code, is subject to the same penalties as the individual who actually commits the criminal offense. Under Section 841(a)(1) of the same title, Congress has legislated that it is unlawful for a person to knowingly or intentionally distribute a controlled substance. The penalties for an offense under this Section of the Code are set forth in subsection (b), which state, in relevant part, that "[i]n the case of a controlled substance in schedule I or II, . . . such person shall be sentenced to a term of imprisonment of not more than 20 years[.]"

It should also be noted that Beckley has inadvertently given the Court several reasons as to why those traces of TFMPP, which were found in the pills by the Government during its post-arrest analysis phase of this case, should be given further exploration. Beckley states in his post-hearing brief:

> [i]t is only when BZP is boosted with another compound, [TFMPP] does it take on the hallucinogenic effect. Dr. Marinetti stated that, 'the combination of BZP and

> TFMPP produces a stimulant and hallucinogenic effect as opposed to just a stimulant effect when BZP is administered alone. In Dr. Marinetti's opinion, it is only when you mix BZP with TFMPP does it rise to the level of MDMA.

He also asserts that BZP alone is a "comparatively mild stimulant" when compared to the effects of MDMA. The Government submits that the DEA has published its conclusion on two occasions that the BZP-TFMPP combination is being increasingly sold and used as an alternative to MDMA. On July 18, 2002, the DEA published a notice of its intent to place BZP-TFMPP in the Schedule I listing of the Controlled Substances Act. In its notice, the DEA stated:

> Over the past few years, in the United States, BZP and TFMPP have increasingly been found in similar venues as the popular club drug . . . (MDMA, also known as Ecstasy). BZP and TFMPP are also sold as MDMA and are targeted to the youth population.

67 F.R. 47341. A more recent DEA report (2007) also states that "BZP is often taken in combination with [TFMPP], a noncontrolled substance, in order to enhance its spectrum of effects and has been promoted to youth population as substitute for MDMA at raves (all-night dance parties)." Dr. Marinetti theorized during the December 2009 hearing that the combination of BZP-TFMPP was "instituted in order to find a legal alternative to MDMA[.]" (Evid. Hr'g Tr. 24, Dec. 16, 2009.)

Accordingly and in an effort to resolve the now pending issues which have been raised in the pending motion, the Court will not ignore any admissible evidence which shows or tends to show that TFMPP enhances the deleterious effects of BZP to its users. *See* U.S. Sentencing Guidelines Manual § 1B1.3, note 1 ("The principles and limits of sentencing accountability under this guideline are not always the same as the principles and limits of criminal liability.")

### III.

In those situations in which a controlled substance is not specifically referenced in the

United States Sentencing Guidelines, courts must find the "most closely related controlled substance" in order to determine the base offense level of the controlled substance. U.S. Sentencing Guidelines Manual § 2D1.1 cmt. n.5. The Guidelines provide that

> [T]he court shall, to the extent practicable, consider the following:
>
> (A) Whether the controlled substance not referenced in this guideline has a chemical structure that is substantially similar to a controlled substance referenced in this guideline.
> (B) Whether the controlled substance not referenced in this guideline has a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance referenced in this guideline.
> (C) Whether a lesser or greater quantity of the controlled substance not referenced in this guideline is needed to produce a substantially similar effect on the central nervous system as a controlled substance referenced in this guideline.

*Id.*

Beckley's pending motion urges the Court to identify the most closely related controlled substance to BZP alone.[9] On the other hand, Dr. Marinetti submitted a report which considered BZP and TFMPP collectively, and, in doing so, reached the following conclusions; namely, (1) BZP-TFMPP "does not have a chemical structure that is substantially similar to a controlled substance listed in the Sentencing Guidelines Manual[;]" (2) BZP-TFMPP has a "stimulant and hallucinogenic effect on the central nervous system that is substantially similar to [MDMA], a controlled substance listed in the Drug Equivalency Tables[;]" and (3) "[a]n equal amount of BZP in combination with TFMPP in a 1:1 ratio is needed to produce a substantially similar effect on the central nervous system as [MDMA], a controlled substance listed in the Drug Equivalency Tables." Thus, it was

---

[9]Bono analyzed BZP in isolation and concluded that its most closely related controlled substance is methylphenidate. However, Dr. Marinetti, when analyzing BZP in isolation, opined that amphetamine is its most closely related controlled substance.

7

her conclusion that the most closely related controlled substance to BZP-TFMPP is MDMA.

Beckley, however, disagrees, contending that the Court must know the ratio of BZP to TFMPP before accepting this conclusion by Dr. Marinetti. The Government counters by arguing that (1) the Sentencing Guidelines direct the Court "to look for similarities, not sameness," and (2) this analysis should be undertaken "to the extent practicable."

The Court accepts the challenge of initially embarking upon a fact-finding mission in order to render an appropriate sentence upon a criminal defendant which should be conducted under a preponderance of the evidence standard. According to the Sixth Circuit, the definition of preponderance of the evidence is "evidence that is of greater weight, on balance, than that offered in opposition to it." *Benge v. Johnson*, 474 F.3d 236, 248 (6th Cir. 2007) (citing 32A C.J.S. Evidence § 1312 (2006)). It has also defined this evidentiary burden as a showing of that which is "more likely than not." *United States v. Moses*, 289 F.3d 847, 852 (6th Cir. 2002). Thus, the Court is tasked with the responsibility of identifying the most closely related controlled substance to BZP-TFMPP by looking to the three criteria outlined in § 2D1.1 cmt. n. 5 of the Sentencing Guidelines Manual, and in doing so it must find facts on the basis of the preponderance of the evidence standard.

In this case, the evidence in the record indicates that there is no controlled substance within the Sentencing Guidelines Manual that has a chemical structure which is similar to that of BZP-TFMPP. With respect to the effects on the central nervous system, Beckley maintains that the Court cannot render a final decision on the principal issue in this case unless it can ascertain the exact ratio of BZP to TFMPP. However, there is other evidence in the record which suggests that the post arrest pills (i.e., BZP-TFMPP) had substantially similar effects on the central nervous system upon

the user as MDMA. For instance, Dr. Marinetti opined that (1) BZP has a stimulant effect on the central nervous system and (2) TFMPP produces hallucinogenic effects. This testimony is substantiated by the above-referenced DEA reports which state that BZP and TFMPP are sold in combination in order to mimic the effects of MDMA. In addition, although Beckley urges the Court not to consider the intent of his co-Defendants in this case, he has not disputed the Government's contention that when entering a guilty plea in this case, two of his co-Defendants (Shantell Johnson and Albany Cooper) asserted that they "all believed they were entering into conspiracy to purchase and distribute Ecstasy." (Evid. Hr'g. Tr. 41.) Rather, he has only urged the Court to analyze BZP without the TFMPP. If this suggestion is adopted by the Court, it would be obliged to conclude that the most closely related controlled substance in this case is methylphenidate. However, this argument is overridden by the view of Dr. Marinetti who opined during the hearing that methylphenidate "is a stimulant and produces stimulant effects. The combination of TFMPP and BZP produce a stimulant *and* hallucinogenic effect at the same time." (Evid. Hr'g. Tr. 21) (emphasis added). Thus, the evidence offered in this case to support a finding that the effects of BZP-TFMPP are substantially similar to that of MDMA appear to be of greater weight than that offered by Beckley to show that the effects are substantially similar to those of methylphenidate.

The final § 2D1.1 criteria requires the Court to determine how much of the BZP-TFMPP combination is needed to produce a substantially similar effect to a controlled substance. Dr. Marinetti opined that, based on her review of the available scientific literature, "BZP in combination with TFMPP in a 1:1 ratio is needed to produce a substantially similar effect." However, for the reasons that have already been expounded above, the Court disagrees with Beckley's contention that it must know the ratio before making a finding – under the preponderance

9

of the evidence standard – that BZP-TFMPP is substantially similar to MDMA, as opposed to methylphenidate as he has advanced.  Requiring the Government to set forth the precise ratio of BZP to TFMPP in each pill recovered in this case would impose a greater evidentiary burden than it must bear, especially when considering all of the evidence in its totality. Although § 2D1.1 states that the Court must find the most closely related controlled substance, it must be done expeditiously and "to the extent practicable."  The language of this provision and the applicable evidentiary burden suggest that the Court is not required to find a drug that is exactly the same as BZP-TFMPP with scientific precision, as Beckley seems to advance here.

Thus, the Court, after a thorough review of the official record in this action, determines that MDMA is the most closely related controlled substance to BZP-TFMPP.  Thus, if Beckley is convicted according to the superseding indictment, the Court will use MDMA to determine his offense level and, ultimately, to impose an appropriate sentence on him.

IV.

Accordingly, for the reasons stated above, the Court, must and does, deny Beckley's request to declare that the most closely related controlled substance in this case is methylphenidate. Rather, the Court concludes that the most closely related controlled substance is MDMA.

IT IS SO ORDERED.

Dated:   March 6, 2010                                                     S/Julian Abele Cook, Jr.
    Detroit, Michigan                                              JULIAN ABELE COOK, JR.
                                                                              United States District Court Judge

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective

email addresses or First Class U.S. mail to the non-ECF participants on March 6, 2010.

<span style="float:right">s/ Kay Doaks<br>Case Manager</span>